**Shirley JACKSON, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security,\* Defendant–Appellee.**

**No. 95–3462.**

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1996.

Decided Aug. 20, 1996.

As Amended on Denial of Rehearing
and Suggestion for Rehearing
En Banc Sept. 16, 1996.

Rehearing Denied Oct. 25, 1996.

---

\* The Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, § 107, 108 Stat. 1464, 1477–78, substituted the Commissioner of Social Security as defendant in place of the Secretary of Health and Human Services. During the pendency of this litigation, the position of Secretary was occupied by Louis W. Sullivan, M.D., and then Donna Shalala.

Frederick J. Daley (argued), Chicago, IL, for Plaintiff-Appellant.

Grace M. Kim (argued), Dept. of Health and Human Services, Region V, Office of General Counsel, James J. Kubik, Office of the United States Attorney, Chicago, IL, for Defendant-Appellee.

Before COFFEY, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This appeal requires that we determine whether the district court abused its discretion in denying a motion for attorney fees under the fee-shifting provision of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). The district court determined that the government's position in this litigation was substantially justified, and be-

cause we find this decision to have been a proper exercise of discretion, we affirm.

I

In October 1990, Shirley Jackson applied for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381a, 1382, claiming that she was disabled due to tightened muscles in her right arm. Jackson, who is left-handed, was at that time forty-one years old and had prior work experience as an assembler. The Secretary of Health and Human Services denied her application, and an administrative law judge conducted a hearing on Jackson's claim in September 1991. The ALJ issued his decision in January 1992, holding that although Jackson did have limited use of her right arm, there were plenty of jobs available in the marketplace with duties that she could perform. Jackson requested review by the Appeals Council, which denied review of the ALJ's decision.

Jackson subsequently filed a complaint in the Northern District of Illinois requesting judicial review of the agency action. *See* 42 U.S.C. § 405(g). The parties traded motions for summary judgment under FED. R. CIV. P. 56, and the district court referred these motions to a magistrate judge for the preparation of proposed findings of fact and a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge issued his report on August 3, 1993, and Jackson filed her objections thereto. The focus of Jackson's objections was the testimony offered by Meyer Klein, a vocational expert who testified for the government at the administrative hearing. Klein testified that Jackson was suited for work as a security guard and that EMPLOYMENT STATISTICS QUARTERLY, an industry publication, listed approximately 2,600 of these "unskilled, light positions" available in the Chicago area.

Jackson claimed that this testimony was contradicted by information contained in DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991), published by the Department of Labor, which rated the position of security guard as "semi-skilled" rather than "unskilled." In addition, Jackson claimed that EMPLOYMENT STATISTICS QUARTERLY showed that all of the 2,528 sedentary jobs in the security sector were performed by those with prior experience and that EMPLOYMENT STATISTICS QUARTERLY did not classify any entry-level position in this sector as sedentary.

The district court awarded summary judgment to the defendant on June 7, 1994. In reaching this decision, the district court noted the discrepancy between Klein's testimony and the information contained in the two publications described above. (Neither of these publications was part of the record before the ALJ.) The district court recognized that, based on this discrepancy, had Klein's testimony been necessary to the ALJ's decision, that decision could not be based upon substantial evidence. *See Limberopoulos v. Shalala*, 17 F.3d 975, 980 (7th Cir.1994). However, the district court reasoned that there was "ample evidence" in the record to support the ALJ's decision absent Klein's testimony.

This evidence took the form of a letter from vocational expert Jim Anderson dated November 19, 1990, in which Anderson wrote that there were more than 250,000 assembler positions in Illinois involving light work, which the parties agree Jackson is capable of performing. The district court stated that the ALJ had used the security guard position only as an example of the type of work suitable for Jackson and had recognized the existence of a significant number of similar positions involving light work. The district court concluded that because the record contained evidence of at least four other vocations suitable for someone with Jackson's physical limitations constituting 250,000 jobs in Illinois, the ALJ's decision was supported by substantial evidence.

Jackson filed a motion to alter the judgment under FED. R. CIV. P. 59(e). She argued that the district court had essentially reweighed the evidence when it affirmed the ALJ's decision by relying on different grounds—grounds that the ALJ had failed to discuss and, by virtue of accepting Klein's testimony (which conflicted with Anderson's letter), had implicitly rejected. She pointed to the district court's own statement that Klein's testimony was, by itself, insufficient

to meet the substantial evidence standard and concluded that the district court was therefore mistaken in holding that substantial evidence supported the ALJ's decision. The district court granted Jackson's Rule 59(e) motion and entered judgment on July 20, 1994, remanding the matter to the ALJ for further proceedings—namely, the presentation of evidence concerning the existence of suitable jobs in the marketplace.

Jackson filed her motion for attorney fees under 28 U.S.C. § 2412(d)(1)(A) on October 4, 1994, seeking a total award of $10,918.62. The district court denied Jackson's motion on May 17, 1995, finding that the government's litigation position was substantially justified because it had a reasonable basis in both law and fact. Jackson filed another motion to alter the judgment under FED. R. CIV. P. 59(e). The district court denied this motion, and Jackson now appeals.

## II

### A

■ The EAJA is one of several fee-shifting statutes in the United States Code. The portion pertinent to this appeal provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Jackson obtained a "sentence four" remand under 42 U.S.C. § 405(g), and the district court assumed that this conferred prevailing party status upon her by virtue of the Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292,

301–02, 113 S.Ct. 2625, 2631, 125 L.Ed.2d 239 (1993).

The district court in the *Schaefer* case entered an order reversing the Secretary's denial of benefits and remanding for a determination of benefits consistent with its order. The Supreme Court stated that "[o]btaining a sentence-four judgment reversing the Secretary's denial of benefits" met the description of a prevailing party enunciated in *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). *Schaefer*, 509 U.S. at 302, 113 S.Ct. at 2632. The *Garland* Court held that prevailing party status is obtained "[i]f the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit ... sought in bringing suit." 489 U.S. at 791–92, 109 S.Ct. at 1493.

We find the *Schaefer* Court's use of this language from *Garland* persuasive support for our view that *Schaefer* did not effect a sea change in the Court's interpretation of "prevailing party" in § 2412(d)(1)(A), as previously provided in *Garland.* Had the Court wished to repudiate or materially alter the *Garland* standard, it certainly would not have cited and quoted that opinion in defining the characteristics of a prevailing party. In fact, the respondent in *Schaefer* achieved precisely what *Garland* established as the minimum threshold, for the district court reversed the Secretary's decision denying benefits.

With all this in mind, it is apparent that Jackson has not yet accomplished what *Garland* held to be the test for prevailing parties, for she has failed to achieve any measure of her requested relief. The district court in this case did not reverse either of the earlier decisions reached by the ALJ and the Secretary; it reversed only its own previous position. Nor did it award to Jackson any of the benefits she sought in bringing the suit.

The basis for the judgment and remand was the need for the ALJ to take additional evidence concerning the availability of employment positions suitable for someone with Jackson's physical restrictions. Jackson's success on the Rule 59(e) motion cannot qual-

ify her as a prevailing party under *Garland*, for she has achieved only another bite at the apple. We are not impressed by Jackson's argument that a party might be eligible for a fee award under § 2412(d)(1)(A) in a lawsuit in which she did not prevail.

■ Accordingly, we would be tempted to affirm the district court's ruling on this ground alone had the government raised this issue either before the district court or in this appeal. However, its failure to do so forecloses an opportunity to express by decision our understanding that the broad language in *Schaefer* did not alter the essential characteristics of a prevailing party under § 2412(d)(1)(A) as announced in *Garland*.

B

■ Under § 2412(d)(1)(A), a district court may award attorney fees to a prevailing party only if the litigation position of the United States was not substantially justified. In EAJA proceedings, the government carries the burden of proving that its position met this standard. Although the EAJA does not define "substantially justified," the Supreme Court has held that this term means a position that is

> "justified in substance or in the main"— that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (citations omitted). And in a footnote answering a comment contained in a concurrence, the Court offered the following elaboration:

> [A] position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.

*Id.* at 566 n. 2, 108 S.Ct. at 2550 n. 2. We review a district court's determination of whether a position meets this standard for an abuse of discretion, but this deferential standard does not dilute our meaningful examination of the district court's decision. *Id.* at 562–63, 108 S.Ct. at 2548–49; *Raines v. Shalala*, 44 F.3d 1355, 1360 (7th Cir.1995); *Marcus v. Shalala*, 17 F.3d 1033, 1037 (7th Cir. 1994).

■ In examining the government's position, we are to look at both its prelitigation conduct and its litigation position. Yet the statute does not allow for discrete findings as to each of these temporally distinct elements, and we must therefore arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action. *Marcus*, 17 F.3d at 1036. Upon our review of the record, we find nothing that would lead us to question the correctness of the district court's decision denying attorney fees, much less anything that would lead us to characterize its decision as an abuse of discretion.

III

The focus of the inquiry in this case is the government's position concerning the existence in the marketplace of work suitable for someone of Jackson's abilities. The Social Security Act provides that an individual is disabled within the meaning of the Act "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The final step in this analysis is to determine if there are jobs that the claimant can perform, *see* 20 C.F.R. § 416.920 (1992), and it is the government's position on this issue that is the basis for Jackson's motion for fees under § 2412(d)(1)(A).

Jackson argues that the district court committed legal error by including the government's responses to her motions to alter the district court's decisions in both the lawsuit and the EAJA proceeding in its examination of the government's litigation position. She

suggests that this amounted to the district court's legal interpretation of the term "position of the United States" contained in § 2412(d)(1)(A), thus warranting our plenary review. Although we would review a district court's legal interpretation of the EAJA *de novo*, see, e.g., *Raines*, 44 F.3d at 1360; *Marcus*, 17 F.3d at 1036, it is unnecessary for us to do so here. For even without the government's responses to Jackson's motions under FED. R. CIV. P. 59(e), we find that the government's litigation position was substantially justified as that term is used in § 2412(d)(1)(A).[1]

It is interesting that Jackson quibbles with the district court's decision to consider the government's responses to her two Rule 59(e) motions, because it is primarily the content of those responses to which she points as evidence of the unreasonable position maintained by the government in the course of this litigation. Jackson's primary argument is that the government's decisions to offer new (i.e., not previously articulated) defenses of the ALJ's decision in its responses to Jackson's Rule 59(e) motions in the lawsuit and the EAJA proceeding were by themselves unreasonable so as to taint the government's position in the rest of the entire civil action. We disagree. These submissions did refer to Anderson's letter, but that letter was part of the record. The fact that the ALJ chose not to rely upon the letter in reaching his decision does not erase it from the proceedings. And although the district court, by its own admission, did exceed the permissible scope of factual review, that decision does not impute a lack of foundation to the government's litigation position.

Jackson also contends that the government's position was not substantially justified because the government defended the testimony of Klein in the face of conflicting evidence contained in DICTIONARY OF OCCUPATIONAL TITLES and EMPLOYMENT STATISTICS QUARTERLY. This argument is squarely answered by the Supreme Court's statement in *Pierce* that "a position can be justified even though it is not correct." 487 U.S. at 566 n. 2, 108 S.Ct. at 2550 n. 2. And a position is elevated to the threshold of substantial justification "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* Here, Klein provided expert testimony by way of his opinion. As it turns out, his opinion is somewhat inconsistent with certain industry publications normally used to determine the availability of certain classes of jobs. This inconsistency is alone insufficient to taint the government's litigation position, particularly when one considers the precise nature of the discrepancies.

Klein testified that Jackson could find suitable work in one of several unskilled positions, including messenger or security guard. Mr. Klein also stated that EMPLOYMENT STATISTICS QUARTERLY listed approximately 2,600 entry-level, sedentary security guard jobs in the Chicago area. However, DICTIONARY OF OCCUPATIONAL TITLES classifies security guard as a semi-skilled position, and the available security guard positions in the Chicago area were not entry-level. The government may have been incorrect in advocating the position advanced by Klein with respect to the existence of suitable work in light of the conflicting information in these two sources. However, being incorrect on one point does not translate into lacking substantial justification for one's litigation

---

1. We note, however, that § 2412(d)(1)(B) directs a district court to examine the record "made in the civil action for which fees and other expenses are sought." The focus of the government's response to Jackson's first Rule 59(e) motion was Anderson's letter. This letter was part of the record in the administrative proceeding, and it therefore informs an inquiry into the litigation position of the government, regardless of whether the government specifically referenced this letter in its pleadings filed in the lawsuit or in the EAJA proceeding.

Jackson's real concern seems to be that the district court "decided *sua sponte* that it could grant [the government's] cross motion for summary judgment based on Mr. Anderson's letter," for she claims that the district court thereby alerted the government to the potential use of this evidence. Despite her protestations to the contrary, Jackson's argument on this point does not implicate the same concerns expressed by the District of Columbia Circuit in *Federal Election Comm'n v. Rose*, 806 F.2d 1081, 1089 (D.C.Cir. 1986). The government introduced Mr. Anderson's letter into the record, and its reference to it in response to Jackson's first Rule 59(e) motion did not amount to a "*post hoc* rationalization." *See id.*

position during the entirety of a civil action. There was other evidence in the record that supported Klein's assessment of the marketplace, and the government was no less entitled than the ALJ to choose between permissible, though conflicting, views of the available evidence.

In sum, we find little to commend in Jackson's arguments that she is deserving of an award of attorney fees under § 2412(d)(1)(A). The district court was well within its sound discretion in denying her motion, and the judgment is therefore AFFIRMED.