In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1948

United States of America,

Plaintiff-Appellee,

v.

Hallmark Construction Company,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97-C-3682--Suzanne B. Conlon, Judge.

Argued December 1, 1999--Decided January 11, 2000

Before Bauer, Cudahy and Flaum, Circuit Judges.

Flaum, Circuit Judge.  The United States filed suit on behalf of the Army Corps of Engineers (the "Corps") charging Hallmark Construction Company ("Hallmark") with discharging pollutants into a wetland in violation of the Clean Water Act ("CWA"), 33 U.S.C. sec. 1251 et seq. The trial court found in favor of Hallmark on the merits but denied Hallmark the attorney's fees it requested under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. sec. 2412. Hallmark now appeals the denial of attorney's fees. For the reasons stated herein, we remand.

I.  BACKGROUND

In 1988, Hallmark purchased a plot of land known as Area B, a natural topographical depression situated in the middle of the Swift Research Farm in Frankfort, Illinois. In 1989, Hallmark began a construction project on Area B that involved filling some parts of the depression. It is a violation of the CWA to discharge pollutants into an area identified as a wetland without a permit or some form of mitigation. Therefore, in 1990, Hallmark hired Planning Resources, Inc. ("PRI") to identify potential wetlands that its construction might affect. PRI identified Area B as a "farmed wetland." Hallmark promptly provided the PRI

report to the Corps, and the Corps requested that Hallmark develop a plan to mitigate the damage caused by its discharge of pollutants into Area B. In 1995, Hallmark employed SDI Consultants, Ltd. ("SDI") to assist in developing a mitigation plan for Area B. However, SDI came to the conclusion that Area B was not a wetland and required no mitigation. Hallmark provided SDI's report to the Corps. However, the Corps continued to believe that Area B was a wetland and to demand mitigation.

On May 19, 1997, the Corps, through the United States Attorney, filed a complaint against Hallmark alleging that Hallmark had violated the CWA by discharging pollutants into Area B. Hallmark contested this allegation, arguing that Area B was not a wetland. Hallmark provided the Corps with documents, studies and the deposition testimony of witnesses to support its contention that Area B was not a wetland. Hallmark's chief argument was that Area B was not inundated with water for a long enough period of time to qualify as a wetland under applicable wetland delineation criteria. The Corps persisted with its complaint, and Hallmark moved for summary judgment. The district court initially concluded that the Corps was not empowered to enforce the CWA against Hallmark and granted summary judgment for Hallmark on this basis. Then, on a motion from the government to reconsider, the district court reversed its ruling and denied summary judgment to Hallmark. In its second summary judgment order, the district court determined that, among other things, there were genuine factual disputes concerning the attractiveness of Area B as a habitat for migratory birds and the actual length of time for which Area B was inundated during the growing season. However, the district court also stated that "[t]he United States may face an uphill battle in convincing a jury to credit its interpretation of [the evidence]." The court then set the case for a bench trial.

At this point, Hallmark's attorneys filed a motion with the court for leave to withdraw because Hallmark was unable to pay its attorney's fees, but the trial court denied this motion. Hallmark's attorneys went forward to ably represent Hallmark at trial, and the district court ruled in favor of Hallmark. In its merits opinion, the district court stated that much of the Corps' evidence rested on speculation and conjecture and found that the Corps' determination that Area B was a wetland was an arbitrary and capricious application of the CWA. Hallmark then petitioned to recover attorney's fees from the government under the EAJA. The district court denied Hallmark's motion, finding that the government's position in the litigation

had been substantially justified. Hallmark now appeals.

II.  DISCUSSION

Hallmark appeals only the district court's denial of its motion for attorney's fees under the EAJA. We review the district court's decision in this matter for an abuse of discretion. Pierce v. Underwood, 487 U.S. 552, 558 (1988); Jackson v. Chater, 94 F.3d 274, 278 (7th Cir. 1996). However, "this deferential standard does not dilute our meaningful examination of the district court's decision." Jackson, 94 F.3d at 278; see Marcus v. Shalala, 17 F.3d 1033, 1037 (7th Cir. 1994).

The EAJA provides that a district court may award attorney's fees where 1) the claimant is a "prevailing party"; 2) the government's position was not substantially justified; 3) no "special circumstances make an award unjust"; and 4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. 28 U.S.C. sec. 2412(d)(1)(A), (B); Commissioner, INS v. Jean, 496 U.S. 154, 158 (1990). It is uncontested that Hallmark was the prevailing party and that the fee application was timely filed. In addition, no "special circumstances" are alleged. Therefore, the only question for us on appeal is whether the district court abused its discretion in finding that the government's position was substantially justified.

Ordinarily, we give the district court's conclusion on the question of substantial justification considerable deference because "the district court may have insights not conveyed by the record, into such matters as whether particular evidence was worthy of being relied upon, or whether critical facts could easily have been verified by the Government." Pierce, 487 U.S. at 560. However, in this case, it is not apparent that the district court applied the proper legal standard to arrive at its conclusion regarding the justification of the government's position. Therefore, deference to that court's special competence in evaluating factual matters does not end our inquiry.

The reason given by the trial court for its denial of Hallmark's petition is as follows:

While this court found Hallmark's evidence regarding Area B more persuasive, the government's case was far from baseless. There existed a genuine dispute over which reasonable minds could differ. For that reason, Hallmark's attempts to secure judgment prior to trial

failed. . . . Failure to prevail at trial does not necessarily mean that the government's litigative position was unreasonable or unjustified.

Order Denying Attorney's Fees, April 5, 1999. This brief statement of the district court's reasoning might be satisfactory in some cases. However, it is an insufficient explanation of that court's conclusion in this case. Although there is no presumption that a prevailing party against the government will recover attorney's fees under the EAJA, Marcus, 17 F.3d at 1036, the government bears the burden of proving that its position meets the substantially justified standard, id., see also Jackson, 94 F.3d at 278. In this case, the trial court had found in its merits opinion that "[t]he Corps' conclusion [that Hallmark violated the CWA] was arbitrary and capricious because it was not based on a consideration of the relevant factors and evidence." United States v. Hallmark Constr. Co., 30 F.Supp. 2d 1033, 1041 (N.D. Ill. 1998). The district court also had determined that "[m]uch of the government evidence rested on speculation and conjecture." Id. at 1039. While these conclusions alone may not mandate an award of attorney's fees, they do raise the question of how the government was able to prove the substantial justification of its position in light of the district court's ultimate findings. See Marcus, 17 F.3d at 1038 (noting that strong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees); Cummings v. Sullivan, 950 F.2d 492, 498 (7th Cir. 1991) (finding that "the closeness of the question is, in itself, evidence of substantial justification"). Where, as here, the trial court's merits opinion so strongly favors the defendant against the government, a more thorough explanation for denying attorney's fees to the prevailing party is warranted.

We recognize that the mere finding that the government's position was arbitrary and capricious does not mandate an award of attorney's fees under the EAJA. The outcome of a case is not conclusive evidence of the justification for the government's position. See Pierce, 487 U.S. at 569 ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."). Similarly, the stage of the proceedings at which the case is disposed of also does not mandate a particular finding on the issue of attorney's fees. See id. at 568-69 (explaining that the fact that the government was unable to survive summary judgment

does not mandate an award of attorney's fees). While the district court may consider objective criteria such as these when they are relevant, we caution that these objective factors are rarely conclusive. See id. at 568-69. It is more important for the district court to examine "the actual merits of the Government's litigating position." Id. at 569. This analysis will vary considerably with the circumstances of each case. However, it is rare that a single factor will be dispositive of whether the government's position was substantially justified, and the district court's analysis should contain an evaluation of the factual and legal support for the government's position throughout the entire proceeding. We find the district court's brief description of its reasoning in this case especially troubling, as we are left with the impression that the mere fact that the government succeeded in surviving summary judgment was central to the trial court's determination that its position was substantially justified.

While the resolution of the attorney's fees question "'should not result in a second major litigation,'" Pierce, 487 U.S. at 563 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)), when considering this issue the district court must reexamine the legal and factual circumstances of the case from a different perspective than that used at any other stage of the proceeding, see Cummings, 950 F.2d at 498 (stating that "substantial justification" and "substantial evidence" are different standards used at different stages of the proceeding); see also Pierce, 487 U.S. at 568-69 (noting that substantial justification is not equivalent to the summary judgment standard). This Court has described the substantial justification standard as requiring that the government show that its position was grounded in "'(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.'" Phil Smidt & Son, Inc. v. NLRB, 810 F.2d 638, 642 (7th Cir. 1987) (quoting Donovan v. Dial America Mkting, Inc., 757 F.2d 1376, 1389 (3d Cir. 1985))./1 In addition, there is also a certain element of policy involved in the award of attorney's fees under the EAJA. The potential threat of having to pay for the litigation costs of the opposing party may serve as an encouragement to government agencies to investigate, prepare and pursue litigation against private parties in a professional and appropriate manner. Likewise, the potential for recovering the expenses a private party puts forward to oppose the government encourages members of the public to assist in the "valuable public service [of]

improving the efficiency of government operations." Gotches v. Heckler, 773 F.2d 108, 111 (7th Cir. 1985).

In making a determination of substantial justification, the district court must examine the government's conduct in both the prelitigation and litigation contexts. See Marcus, 17 F.3d at 1036 ("[F]ees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa."). For example, we have held that an EAJA award may be justified where an agency knows before trial that there is conflicting evidence on a key point it is required to prove and it "fail[s] to take adequate measures to assess that evidence." Phil Smidt, 810 F.2d at 643. In this case, the government apparently had full knowledge before trial of Hallmark's conflicting evidence regarding the central issue of the inundation period for Area B. We would expect the district court's attorney's fees opinion to address, among other things, whether it was reasonable for the government to proceed to trial if it had adequately assessed Hallmark's computer modeling and eye-witness testimony as compared to its own evidence on this issue.

The district court's analysis must not end here, however. A determination of substantial justification requires the district court to examine the position the government took at the litigation stage as well. For example, we have concluded that "even if an agency's legal argument is perfect . . . , the agency may still be liable for costs, fees and expenses under the EAJA if the agency has knowledge that the presumed facts supporting its position are without merit." Phil Smidt, 810 F.2d at 642. In this case, the government was unable to prove at trial the required minimum 15 day inundation period. We would expect the district court's attorney's fees opinion also to address whether the government was substantially justified in pressing forward with the suit given the factual support it had for the legal elements it was required to prove.

Finally, we note that the trial court does not make separate determinations regarding each stage but "arrive[s] at one conclusion that simultaneously encompasses and accommodates the entire civil action." Jackson, 94 F.3d at 278. This global assessment comprehends that the district court will examine not simply whether the government was substantially justified in its position at the beginning or end of the proceedings, but whether the government was

substantially justified in continuing to push forward at each stage. See Quality C.A.T.V., Inc. v. NLRB, 969 F.2d 541, 545 (7th Cir. 1992) (holding that the government's position was substantially justified only up to the point in the proceedings at which it became apparent that its theory was "unsupportable"). We understand that the standard for evaluating the appropriateness of awarding attorney's fees under the EAJA is somewhat nebulous. It is for this reason that we require a thorough explanation of the reasoning behind the district court's decision in cases such as the one before us, where the district court's conclusion on the merits that the government's position was "arbitrary and capricious" appears, at least on the surface, to be at odds with its subsequent conclusion that the government's position was "substantially justified."

III.  CONCLUSION

We cannot determine on the record before us whether the district court abused its discretion in denying attorney's fees to Hallmark, the prevailing party in this matter. Therefore, we Remand for the district court to reexamine the issue of attorney's fees consistent with this opinion.

/1 We are aware that Phil Smidt was decided one year before Pierce, where the Supreme Court addressed the proper application of the substantial justification standard. However, the Phil Smidt formulation was an elaboration on the term having "a reasonable basis in law and fact" that the Supreme Court expressly found was an acceptable interpretation of "substantial justification." See Pierce, 487 U.S. at 565 ("[Our interpretation] is no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals.") (citing Ramos v. Haig, 716 F.2d 471, 473 (7th Cir. 1983)).