**Saed A. SALEM, Plaintiff,**

v.

**UNITED STATES of America IMMIGRATION AND NATURALIZATION SERVICE, Janet Reno, Attorney General of the United States, Doris Meissner, Commissioner of the Immigration and Naturalization Service, and Brian Perryman, District Director of the Chicago District Office of the Immigration and Naturalization Service, Defendants.**

No. 00–3053.

United States District Court,
C.D. Illinois.

Nov. 30, 2000.

Michael R. Lied, Peoria, IL, for plaintiff.

James A. Lewis, Springfield, IL, for defendants.

## *OPINION*

RICHARD MILLS, District Judge.

But it too often is overlooked that the lawyer and the law office are indispensable parts of our administration of justice. Law-abiding people can go nowhere else to learn the ever changing and constantly multiplying rules by which they must behave and to obtain redress for their wrongs.

*Hickman v. Taylor*, 329 U.S. 495, 514–15, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (Jackson, J., concurring).

### I. BACKGROUND

On February 25, 2000, Saed A. Salem filed a petition for review asking the Court to order the United States of America's Immigration and Naturalization Service ("INS") to approve his 1996 application for naturalization. In his petition, Salem alleged that he is a citizen of the country of Jordan but that he is a permanent resident of the United States of America who is presently residing in Chatham, Illinois.[1] Salem also alleged that on April 3, 1996, while living and working in Milwaukee, Wisconsin, he filed an application for naturalization seeking to become a citizen of the United States.[2]

On November 20, 1997, Salem was interviewed for naturalization by the INS in

---

1. Salem asserts that he obtained permanent residence status on April 5, 1993, after being a college student in the United States from 1985 to 1991.

2. According to his petition, Salem filed his application for naturalization after he had been a permanent resident for three years and had been married to a United States citizen for those three years, thereby satisfying 8 U.S.C. § 1430's requirements to become a naturalized citizen.

Milwaukee. In addition, he completed all of the testing necessary to become a naturalized citizen. Thereafter, Salem moved to Springfield, Illinois, to begin new employment. Salem's wife, however, did not want to leave Wisconsin and, therefore, did not accompany him in his relocation to Illinois. Accordingly, Salem and his wife obtained a divorce which became final on June 2, 1998.

In May 1998, Salem was notified to come to the INS office in Milwaukee to be fingerprinted. When Salem did so, he informed the INS officers that he had recently moved to Illinois. The INS officers then notified him that his fingerprinting could not be completed at that time and asked him to provide a letter requesting that his file be transferred to the INS office in Chicago for final processing. Salem complied with the INS directive for a letter requesting the transfer of his application and file to Chicago.

Because he had not received any type of notification for some time from the INS regarding his application for naturalization, Salem retained counsel, and in February 1999, his counsel contacted the INS office in Milwaukee to determine the status of Salem's application. After numerous subsequent contacts by Salem and his counsel, his application and file were transferred from the INS Milwaukee office to its Chicago office on April 13, 1999.

On February 7, 2000, Salem was interviewed by INS officer Nelson Larkins. Larkins informed Salem that, although he was fully qualified for citizenship, Larkins was refusing to approve his application because it had initially been filed based upon his marriage to a United States citizen which had now been dissolved. Larkins asked Salem to withdraw his application and to file a new one. In response, Salem asked Larkins if he could simply check a different box on his application because he was qualified for citizenship based upon a different provision of the Immigration and Naturalization Act. Larkins refused and advised Salem of his right

to appeal the decision. Larkins then summoned an appeal officer into the interview, and the appeal officer indicated that she would uphold Larkins' denial of Salem's application.

Due to certain factual disputes (Defendants do not totally agree with the facts alleged in Salem's petition and which are set forth *supra*), the Court denied Defendants' motion to dismiss on July 6, 2000, and, likewise, denied Salem's motion for judgment on the pleadings on September 1, 2000. Rather than conduct an evidentiary hearing to resolve these factual disputes itself, the Court remanded this case on September 1, 2000, to the Commissioner of the INS. In its Order remanding the case, the Court directed the INS to determine (1) whether Salem's application for naturalization was complete at the time of his initial interview in Milwaukee in 1997 or 120 days thereafter when he was still eligible for naturalization based upon his marital status; (2) why it took such an inordinate amount of time for his application and file to be transferred from the Milwaukee to the Chicago INS office and what, if any, bearing this delay had upon his application; (3) why, if Salem's February 7, 2000, interview constituted the INS's final determination regarding his eligibility for naturalization, it took nearly four years for his application to be processed, and what, if any, bearing this fact had upon his application; and (4) whether Salem's 1996 application can be modified and approved on the alternative basis of his five years of residence in the United States (which was due in part to the INS's inordinate delay in processing his application for naturalization) without having to begin the application process anew.

Salem has now asked the Court to award him attorney's fees and costs, pursuant to the Equal Access to Justice Act, as a result of the Court's September 1, 2000 Order remanding this case to the Commissioner of the INS. 28 U.S.C. § 2412. Defendants object to Salem's motion, asserting that, although he is entitled

to costs, Salem is not entitled to attorney's fees because he is not yet a "prevailing party" and because their position was "substantially justified."

## II. ANALYSIS

The Equal Access to Justice Act allows a district court to award costs to a prevailing party against the United States. 28 U.S.C. § 2412(a). These costs include:

> (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. In addition, the Equal Access to Justice Act makes the United States liable for a prevailing party's attorney's fees. 28 U.S.C. § 2412(d). In order for a district court to award attorney's fees pursuant to the Equal Access to Justice Act, the litigant must establish:

> (1) that the claimant [is] a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Commissioner, INS v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (citations and footnote omitted). Finally, 28 U.S.C. § 2412(d)(2)(B) defines a "party" as an individual whose net worth did not exceed $2,000.00 at the time the action was filed.

In the instant case, the Court finds that Salem has established all five factors necessary to receive his costs and attorney's fees under the Equal Access to Justice Act. *First,* Salem's attorney has represented to the Court that Salem has a net worth of less that $2,000.00.[3] *Second,* Salem submitted his application to the Court within 30 days of final judgment in the action and supported his application with an itemized statement. *Third,* the Court is unaware of—and Defendants have not alleged—any special circumstances which would make an award of attorney's fees and costs to Salem unjust.

*Fourth,* the Court finds that, contrary to Defendants' assertions, Salem is a "prevailing party" as that term is used in the Equal Access to Justice Act. The United States Supreme Court has explained that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Texas State Teachers Ass'n v. Garland Independent Sch. Dist.,* 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see Shepard v. Sullivan,* 898 F.2d 1267, 1271 (7th Cir.1990) (same); *see also Maduka v. Meissner,* 114 F.3d 1240, 1241 (D.C.Cir. 1997) (explaining that "[a] party has 'prevailed' if: (1) the party received a significant part of the relief it sought; and (2) the lawsuit was a catalytic, necessary or substantial factor, *see Tucson Medical Center v. Sullivan,* 947 F.2d 971, 982 (D.C.Cir.1991), in obtaining that result. '[T]he claimant must show that it is more probable than not that the government would not have performed the desired act absent the lawsuit.' *Public Citizen Health Research Group v. Young,* 909 F.2d 546,

---

**3.** Although it would have been preferable for Salem himself to have signed an affidavit verifying his net worth, the Court will accept the representation of counsel as an honorable member of this Court's bar on this issue.

550 (D.C.Cir.1990)."). Furthermore, the United States Supreme Court has held that a Social Security claimant who obtains a "sentence-four" remand from a district court is considered a "prevailing party" for purposes of the Equal Access to Justice Act regardless of what happens on remand. *Shalala v. Schaefer*, 509 U.S. 292, 300–02, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 980 (7th Cir.1999) (concluding that ERISA remands are functionally equivalent to Social Security remands and noting that "obtaining a sentence-four remand makes the claimant a 'prevailing party' without regard to what happens on the remand."); *but see Jackson v. Chater*, 94 F.3d 274, 277 (7th Cir.1996) (finding "the *Schaefer* Court's use of this language from *Garland* persuasive support for our view that *Schaefer* did not effect a sea change in the Court's interpretation of 'prevailing party' in § 2412(d)(1)(A), as previously provided in *Garland*.").

■ Here, Salem obtained a remand from this Court to the INS for further consideration of his petition for naturalization. The Court agrees with the United States Court of Appeals for the Ninth Circuit's conclusion that, for purposes of being a prevailing party under the Equal Access to Justice Act, no difference exists between a sentence four remand in a Social Security case and a remand to the INS for further consideration. As the Ninth Circuit has explained:

> Although *Schaefer* was a Social Security case, we can perceive no difference between a "sentence four" remand under § 405(g) and a remand to the BIA for further proceedings. In both cases, the remand terminates judicial proceedings and results in the entry of a final judgment. We conclude that *Schaefer* effectively overrules our holdings in *Escobar Ruiz* and *Beltran–Zavala* that the entry of judgment remanding a case to the BIA for further consideration does not constitute a final judgment in favor of

the petitioner. Because petitioners obtained such a remand, they are prevailing parties under *Schaefer* and, thus, entitled to attorney's fees, unless the government's position was substantially justified.

*Rueda–Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir.1997) (footnote omitted). Thus, because Salem obtained a remand and because this remand terminated the judicial proceedings in this Court, Salem is a prevailing party for purposes of the Equal Access to Justice Act.

■ *Fifth*, the Court finds that Defendants' position was not substantially justified. " '[S]ubstantially justified' means 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Jean*, 496 U.S. at 158 n. 6, 110 S.Ct. 2316, quoting *Pierce v. Underwood*, 487 U.S. 552, 565–66, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). "The test for substantial justification is whether the agency had a rational ground for thinking it had a rational ground for its action." *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir.1994); *see Phil Smidt & Son, Inc. v. NLRB*, 810 F.2d 638, 642 (7th Cir.1987), quoting *Donovan v. DialAmerica Mkting., Inc.*, 757 F.2d 1376, 1389 (3d Cir.1985) (holding that in order to be substantially justified the Government must establish " '(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.' "). "[T]he government bears the burden of proving that its position meets the substantially justified standard." *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1079 (7th Cir.2000).

In determining whether the Government's position is substantially justified, a district court should consider the Government's pre-litigation conduct, *i.e.*, the actions or inactions giving rise to the instant litigation, as well as the Government's conduct relative to the instant litigation. *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th

Cir.1994). "EAJA fees may be awarded if either the government's prelitigation conduct or its litigation position are not substantially justified. However, the district court is to make only one determination for the entire civil action." *Id.* (internal citations omitted). Therefore, attorney's fees may be awarded under the Equal Access to Justice Act where the Government's pre-litigation conduct was not substantially justified despite a substantially justified litigation position. *Id.* Likewise, attorney's fees may be denied even when the Government's litigation position was not substantially justified, provided the litigation position was offset by substantially justified pre-litigation conduct. *Id.; Hallmark Constr.*, 200 F.3d at 1079–80.

In the instant case, the Court cannot say that Defendants' actions were substantially justified. *First,* (and most important) prior to the instant litigation, Defendants took an inordinate amount of time in processing Salem's petition for naturalization. *Nong v. Reno*, 28 F.Supp.2d 27, 29 (D.D.C. 1998) (citing cases and noting that an "agency's conduct is not substantially justified ... if the agency cannot justify its delay in performing the desired action...."). Defendants have offered no explanation as to why, if their position is correct that Salem's February 7, 2000, interview constituted the INS's final determination regarding his eligibility for naturalization, it took nearly **four** years for Salem's application for naturalization to be processed. *Second,* Defendants refused to even consider the possibility of allowing Salem to amend his petition for naturalization on the basis of his residency, forcing him instead to begin anew and causing further delay in the processing of his application for naturalization.

*Third,* awarding attorney's fees under the Equal Access to Justice Act to Salem would foster public policy in that "the potential for recovering the expenses a private party puts forward to oppose the government encourages members of the public to assist in the 'valuable public service [of] improving the efficiency of government operations.' *Gotches v. Heckler,* 773 F.2d 108, 111 (7th Cir.1985)." *Hallmark Constr.,* 200 F.3d at 1080. *Fourth,* after the Court had remanded this case to the Commissioner of the INS, Salem successfully asked the Court to amend the judgment entered by imposing a time limit on the INS within which it had to resolve the issues specified by the Court on remand. Thus, Salem succeeded on a significant issue in this litigation which achieved a benefit which he had sought by bringing suit, *i.e.,* the Court ordered the INS to expedite the resolution of his application for naturalization. *Garland,* 489 U.S. at 789, 109 S.Ct. 1486.

Accordingly, the Court believes that, although Defendants' litigation position may have been substantially justified, their pre-litigation conduct and positions were not. *Marcus,* 17 F.3d at 1036. In short, the Court cannot say that Defendants' conduct and positions were " 'justified in substance or in the main' [or] justified to a degree that could satisfy a reasonable person." *Jean,* 496 U.S. at 158 n. 6, 110 S.Ct. 2316, quoting *Underwood,* 487 U.S. at 565–66, 108 S.Ct. 2541.

Finally, although the Equal Access to Justice Act empowers district courts to increase an attorney's hourly fee if an increase in the cost of living or some other special factor justifies a higher fee, the Court finds no reason to award attorney's fees in excess of the $125.00 per hour limit established in 28 U.S.C. § 2412(d)(2)(A) in this case. On the contrary, the Court believes that the statutory per hour limit adequately compensates Salem's attorney for his work on Salem's behalf in this matter.[4] Accordingly, the Court finds that Salem is entitled to $193.09 in costs and

---

4. The Court also believes that the amount of hours Salem's counsel expended litigating this case was reasonable

$1,650.00 in attorney's fees pursuant to the Equal Access to Justice Act.

*Ergo,* Plaintiff's Application for Costs and Attorney's Fees is ALLOWED. Accordingly, the Clerk of the Court is DIRECTED to amend the judgment entered in this case to reflect an award in favor of Plaintiff and against Defendants for costs and attorney's fees in the amount of $1,843.09 pursuant to the Equal Access to Justice Act. 28 U.S.C. § 2412(d).