William LECHNER, Plaintiff,

v.

Jo Anne BARNHART, Commissioner of the Social Security Administration, Defendant.

No. 03–C–1425.

United States District Court, E.D. Wisconsin.

Aug. 26, 2004.

David F. Traver, Milwaukee, WI, for Plaintiff.

Nora S. Barry, for Defendant or Respondent.

### DECISION AND ORDER ON MOTION FOR AWARD OF ATTORNEY'S FEES

ADELMAN, District Judge.

Plaintiff William Lechner applied for supplemental security income (SSI) under the Social Security Act, alleging that he was disabled due to mental illness. An Administrative Law Judge (ALJ) denied his claim following a hearing, and plaintiff brought this action under 42 U.S.C. § 405(g) seeking judicial review of the denial. I reversed and remanded the ALJ's decision under § 405(g), sentence four, *Lechner v. Barnhart*, 321 F.Supp.2d 1015 (E.D.Wis.2004), and plaintiff now moves for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

## I. EAJA STANDARD

The EAJA mandates an award of attorney's fees to a "prevailing party" in a civil action against the United States where the government's position was not "substantially justified," no "special circumstances" make an award unjust, and the fee application is submitted to the court within 30

days of final judgment. 28 U.S.C. § 2412(d)(1); *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1078–79 (7th Cir.2000). Because I reversed and remanded the Commissioner's decision under sentence four of § 405(g), plaintiff was the "prevailing party." *See Shalala v. Schaefer*, 509 U.S. 292, 302, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); *Raines v. Shalala*, 44 F.3d 1355, 1362 (7th Cir.1995). However, the Commissioner argues that the motion should be denied because her position was "substantially justified." In the alternative, she argues that the amount of the request is excessive and that any fee award should be reduced.[1]

## II. SUBSTANTIAL JUSTIFICATION

### A. Standard

 While the fact that the Commissioner lost in court creates no presumption in favor of awarding fees, *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir.1994), the Commissioner bears the burden of showing that the government's position was "substantially justified" in order to avoid a fee award, *Cummings v. Sullivan*, 950 F.2d 492, 495 (7th Cir.1991). This requires the Commissioner to show that her position had a reasonable basis both in law and fact. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The position must be " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Id.* at 565, 108 S.Ct. 2541. The position need not be " 'justified to a high degree,' " *id.* at 565, 108 S.Ct. 2541, but it must be "more than merely undeserving of sanctions for frivolousness," *id.* at 566, 108 S.Ct. 2541; *see also Lauer v. Barnhart*, 321 F.3d 762, 764 (8th Cir.2003) ("The

standard is whether the Secretary's position is clearly reasonable, well founded in law *and* fact, solid though not necessarily correct.") (internal quote marks omitted); *Hallmark Const. Co.*, 200 F.3d at 1080 (stating that the government must show that its position was grounded in (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced).

 Although the court makes only one determination on this issue, it must consider both the government's posture during the litigation before the court and the pre-litigation decision or action on which the lawsuit was based. *See Cummings*, 950 F.2d at 496–97; *see also Commissioner, INS v. Jean*, 496 U.S. 154, 159, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Thus, fees may be awarded in cases where the government's pre-litigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa. *Marcus*, 17 F.3d at 1036.

### B. Analysis

 In the present case, I reversed the ALJ's decision for three reasons. I address each in turn under the EAJA standard.

### 1. Evaluation of Plaintiff's Credibility

The ALJ committed two errors in evaluating plaintiff's credibility. First, the ALJ improperly limited her credibility determination to the single issue of plaintiff's so-called "black out" episodes, failed to build

---

1. As the Commissioner notes, plaintiff filed his EAJA motion prematurely, i.e. before the time for appeal had expired and the decision had become "final." However, the Commissioner has *not* filed a notice of appeal and agrees that I may consider the motion at this time. The Commissioner also does not contend that any "special circumstances" would make an award unjust.

a bridge from the evidence discussed in the body of her decision to her conclusions, and failed to consider relevant factors under SSR 96–7p. *Lechner*, 321 F.Supp.2d at 1028–30. Second, the ALJ applied an improper legal standard, stating that plaintiff's testimony was not credible because it was "not supported by the objective medical evidence of record," (Tr. at 23), while SSR 96–7p provides: "An individual's statements ... may not be disregarded solely because they are not substantiated by objective medical evidence." *Lechner*, 321 F.Supp.2d at 1030.

The Commissioner argues that her position on this issue was nevertheless substantially justified, characterizing the ALJ's error as one of insufficient "articulation." *See Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir.1992) (holding that an ALJ's failure to properly articulate her rationale "in no way necessitates a finding the Secretary's position was not substantially justified"). While the ALJ's failure to adequately explain her conclusion was *part* of the problem, the Commissioner offers no defense of the ALJ's application of a legal standard at odds with that set forth in SSR 96–7p. It is well-established in this Circuit that ALJs must comply with SSR 96–7p in evaluating a claimant's credibility, *see, e.g., Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir.2003); *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir.2003), including its mandate that an "ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995); *see, e.g., Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.2004) (citing *Clifford v. Apfel*, 227 F.3d 863, 871–72 (7th Cir.2000)). And district courts in this Circuit have regularly held that an ALJ's failure to do so means that the Commissioner's position was not substantially justified. *Koschnitzke v. Barnhart*, 293 F.Supp.2d 943, 952 (E.D.Wis.2003) (collecting cases);

*Crosby v. Halter*, 152 F.Supp.2d 955, 960 (N.D.Ill.2001) (awarding fees where ALJ's finding improperly rested on the absence of objective medical evidence to corroborate the plaintiff's testimony); *see also Cornella v. Schweiker*, 728 F.2d 978, 985 (8th Cir.1984) ("It was not reasonable for the Secretary to ignore her own regulations.").

The Commissioner contends that she had a reasonable basis for concluding that the ALJ's analysis was adequate based on the ALJ's discussion of several relevant credibility factors in her decision (e.g., the medical evidence, plaintiff's "stable" mental functioning, his progress in treatment, and his activities of daily living). The Commissioner made essentially the same argument at the merits stage. *See Lechner*, 321 F.Supp.2d at 1028. While the standard is different at the EAJA stage, *see Crosby*, 152 F.Supp.2d at 959, I find her arguments no more persuasive now than I did then. Contrary to the plain requirements of SSR 96–7p, the ALJ limited her credibility determination to plaintiff's testimony about his "black out" episodes. As the court noted in granting fees in *Crosby*, "the ALJ is obliged to examine and weigh all the evidence including observations by treating and examining physicians, third-party testimony, the claimant's testimony and daily activities, functional restrictions, pain medication taken, and aggravating or precipitating factors to evaluate how much the claimant's impairment affects his ability to work." 152 F.Supp.2d at 960 (internal quote marks omitted). The ALJ mentioned only some of this evidence in her decision, and even then did not tie it to her determination; the court "cannot infer a credibility determination from a general discussion of the evidence." *Lechner*, 321 F.Supp.2d at 1029 (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 915–16 (7th Cir.2003)); *see also Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir.2002)

("Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed.").

It is true, as the Commissioner notes, that the ALJ's credibility determination is ordinarily entitled to "special deference." *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir.2003). However, as I stated in my decision in this case, "the manner in which the ALJ reaches that conclusion is ... highly regulated." *Lechner*, 321 F.Supp.2d at 1027. Because the ALJ failed to comply with SSR 96–7p and to consider all of the relevant evidence and factors, the Commissioner's position on this issue was not "substantially justified." *See Wates v. Barnhart*, 288 F.Supp.2d 947, 953–54 (E.D.Wis.2003) (finding that ALJ's combination of errors in evaluating plaintiff's credibility made *Stein* inapplicable and rendered Commissioner's position not substantially justified); *Zurawski v. Massanari*, No. 99–C–2819, 2001 U.S. Dist. LEXIS 12725, at *9 (N.D.Ill. Aug.21, 2001) ("Where the [Commissioner's] defense of the ALJ's denial of benefits is contrary to the plain language of a Social Security Ruling, the [Commissioner's] position cannot be defined as substantially justified.") (internal quote marks omitted; alternation in original).

### 2. Evaluation of Dr. Lamberton's Opinion

I also remanded the matter so the ALJ could reconsider her rejection of Dr. Lamberton's report. I noted that the ALJ did not realize that plaintiff's care had been transferred from Dr. Hamblin to Dr. Lamberton. Thus, Lamberton's report could have been evaluated as that of a "treating source," entitled to special consideration. *Lechner*, 321 F.Supp.2d at 1031–33.

The Commissioner argues that her position on this issue was substantially justified: it was unclear from the record whether Dr. Lamberton could be considered a treating source, and in any event the ALJ thoroughly explained her rejection of Lamberton's report. I agree that the Commissioner's position on this issue was reasonable.

As noted in my decision,

It appears ... that the ALJ did not realize that Dr. Hamblin had transferred plaintiff's care to Dr. Lamberton. Neither does it appear she realized that Dr. Lamberton had examined plaintiff before preparing his report. It is possible that none of this will change her analysis of Dr. Lamberton's opinion. Nevertheless, when the court cannot be sure that the ALJ considered important evidence it must remand the matter for another look.

*Id.* at 1033 (footnotes omitted). Because there was evidence supporting the ALJ's conclusion, and because the issue was remanded simply so the ALJ could clarify her ruling absent her misunderstanding, the Commissioner's position on this issue was substantially justified. *See Stein*, 966 F.2d at 320 (finding that the Commissioner's position was substantially justified when there was evidence to support it and a genuine dispute existed).

### 3. Evaluation of Plaintiff's Mental Impairment

Finally, the ALJ erred in evaluating plaintiff's mental RFC. Under SSR 96–8p, "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work ...." Section 404.1545(c) provides:

When we assess your mental abilities, we first assess the nature and extent of

your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

In the present case, the ALJ failed to assess plaintiff's mental abilities on a function-by-function basis under § 404.1545(c); instead, she proceeded to directly assign vocational categories without first evaluating functional capacity. Further, the ALJ offered no explanation for and cited no medical evidence supporting her RFC assessment. Therefore, I reversed and remanded for reconsideration. *Lechner*, 321 F.Supp.2d at 1034–36.

The Commissioner argues that SSR 96–8p does not contain a function-by-function articulation requirement for all of the various work-related activities. Rather, it requires only that the ALJ include in her decision a discussion of how the evidence supports her conclusion, with citations to medical and non-medical evidence. And, she contends, the ALJ's decision in the present case complied with those requirements.

I disagree. First, while "SSR 96–8p is less than clear on what an ALJ is required to do when explaining mental RFC," specifically regarding the "the manner in which the ALJ may translate mental RFC into categories or otherwise express it in shorthand fashion," *Lechner*, 321 F.Supp.2d at 1036 n. 27, the Ruling does plainly state: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." This includes the mental

work-related activities listed in § 404.1545(c). The ALJ failed to comply with this requirement of SSR 96–8p in her decision. Moreover, the ALJ "offered no explanation for and cited no medical evidence supporting her RFC assessment," *Lechner*, 321 F.Supp.2d at 1036, as the Commissioner concedes is required. Therefore, the Commissioner's position on this issue cannot be considered substantially justified. *See Samuel v. Barnhart*, 316 F.Supp.2d 768, 773 (E.D.Wis.2004) ("It was unreasonable for the ALJ to disregard SSR 96–8p[.]"); *see also Banks v. Barnhart*, No. 01–C–382, 2003 WL 22019796 at *4–5, 2003 U.S. Dist. LEXIS 14823, at *10–11 (N.D.Ill. Aug. 25, 2003) (awarding fees where RFC analysis was inadequate); *Corder v. Massanari*, No. 00–C–2714, 2001 WL 1355986 at *3, 2001 U.S. Dist. LEXIS 18067, at *9 (N.D.Ill. Oct. 31, 2001) (awarding fees where ALJ offered insufficient explanation for and failed to specify medical evidence supporting RFC determination).

### 4. Conclusion on Substantial Justification

██ "Being incorrect on one point does not translate into lacking substantial justification for one's litigation position during the entirety of a civil action." *Jackson v. Chater*, 94 F.3d 274, 279–80 (7th Cir.1996). However, in the present case, the Commissioner's position on two of the three issues discussed above lacked substantial justification. Given the importance of these issues in the context of the entire case, "the Commissioner's position lacked substantial justification as a whole." *Koschnitzke*, 293 F.Supp.2d at 952; *Wates*, 288 F.Supp.2d at 954 (awarding fees where Commissioner's position on two of three issues was unreasonable); *see also Zurawski*, 2001 U.S. Dist. LEXIS 12725, at *10 (awarding fees where ALJ improperly evaluated plaintiff's

credibility and RFC). Therefore, plaintiff is entitled to a fee award under the EAJA.

### III. REASONABLENESS OF FEE REQUEST

Once the court has decided that an award is appropriate, it must determine whether the amount sought is reasonable. In determining whether plaintiff's requested fees are reasonable I must examine both the rate and the number of hours requested. The EAJA allows for an award of "reasonable attorney fees ... based upon prevailing market rates for the kind and the quality of the services furnished" not to exceed "$125 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Plaintiff must demonstrate the prevailing market rate and, if one is requested, show that a cost of living increase is warranted. *See Hanrahan v. Shalala,* 831 F.Supp. 1440, 1450 (E.D.Wis.1993). Plaintiff also has the burden to show that the number hours expended on the litigation was reasonable. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The reasonableness of the total fee request is evaluated in light of twelve factors set forth in *Hensley:*

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results ob-

tained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Henderson v. Barnhart,* 257 F.Supp.2d 1163, 1169 (E.D.Wis.2002) (quoting *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933).

In his motion, plaintiff requests fees in the total amount of $6062.33, based on 40.9 hours of work,[2] at a rate of $146.52/hour for work performed in 2003 and $148.35/hour for work performed in 2004. Counsel provides a billing statement detailing his time in this case and avers that the hours spent were reasonable and necessary to provide good representation. He requests a cost of living increase in the maximum hourly rate based on the Bureau of Labor Statistics "all items" Consumer Price Index ("CPI–U"), calculating the increase from 1996, when the base rate of $125 was set. Use of the CPI–U has been accepted in this district, *see Harris v. Barnhart,* 259 F.Supp.2d 775, 782 (E.D.Wis.2003), plaintiff's calculations appear to be correct, and the Commissioner does not object to the proposed rates. Therefore, I will accept plaintiff's proposed hourly rates.

However, the Commissioner contends that the overall amount of the request is unreasonable, in excess of that typically awarded in this district. The Commissioner is wrong. *See Wirth v. Barnhart,* 325 F.Supp.2d 911, 914 (E.D.Wis.2004) (rejecting Commissioner's argument that request based on 61.1 hours was "far in excess of the average EAJA award in this district," and collecting decisions awarding fees based on 61.05, 38.5, 53.6, 54.2, 66.95, 53.5, 56.2 and 56.3 hours).

---

2. Counsel spent 39.2 hours on the primary representation and 1.7 hours preparing his

EAJA submission.

■ The Commissioner next argues that because counsel is experienced in social security matters it was unreasonable for him to spend 22 hours on the main brief and 11 hours on the reply. I disagree. First, subsumed within the 22 hour period was the time counsel spent reviewing the administrative record, which was 296 pages long. Counsel did not represent plaintiff at the administrative level and thus had to familiarize himself with the record prior to briefing. Second, counsel's main brief was 25 pages long and contained detailed arguments on three issues, with numerous citations to the record demonstrating a solid grasp of the evidence. The third issue, in particular, contained an innovative argument regarding the meaning (or lack thereof) of "simple, repetitive, low stress" work. Third, the reply brief was 10 pages long and highlighted the weaknesses in the Commissioner's position. In sum, I conclude that the amount of time spent on the briefs was reasonable. *See Wirth,* 325 F.Supp.2d at 914–15 (rejecting argument that because counsel was experienced it was unreasonable for counsel to spend 30 hours on the main brief and 14 hours on the reply brief); *Harris,* 259 F.Supp.2d at 783 (rejecting argument that 40 hours briefing was excessive).[3]

Finally, the Commissioner argues that counsel billed "numerous hours" for time spent on routine, clerical tasks (e.g., receiving and docketing items, drafting certificates of service, updating or checking the docket, composing updates to the client, and filing items with the court), which are not traditionally performed by a lawyer. The Commissioner does not target specific entries on counsel's time sheet, leaving the court to wonder which entries

are allegedly improper or how much time a reasonable lawyer would have spent. Such undeveloped arguments may be considered waived. *See Schoenfeld v. Apfel,* 237 F.3d 788, 793 (7th Cir.2001) (quoting *United States v. Andreas,* 150 F.3d 766, 769 (7th Cir.1998)) ("'We have held time and again that perfunctory and undeveloped arguments . . . are waived.'").

In any event, on my review of the entries I find that counsel spent virtually all of his time (36.7 of 38.9 hours in the primary representation) reviewing the record and briefing (34.5 hours), and meeting with the client initially and preparing the documents needed to commence the case (2.2 hours). Clearly, these are tasks properly performed by a lawyer. Counsel spent .6 hours preparing proofs of service and filing a refusal to consent to jurisdiction by the magistrate judge. (R. 27 Attach. at 1, 12/16/03 entry.) I find nothing excessive about this, particularly given that service in social security cases must be made on both the Administration's General Counsel and the Attorney General, and that counsel must sign the refusal to consent. Counsel spent .2 hours receiving items from the court and updating his calendar. (*Id.,* 1/5/04 and 1/6/04 entries.) Lawyers are supposed to keep track of briefing schedules and other items sent by the court, and the amount of time plaintiff's counsel spent doing so here was minuscule. Counsel spent .1 hours preparing a letter to his client with a copy of the briefing schedule. (*Id.,* 1/5/04 entry.) Lawyers are required to keep their clients reasonably informed, S.C.R. 20:1.4 (Wis.), and counsel spent the minimum amount of time possible doing so here. Counsel spent .1

---

3. The Commissioner argues that the government should not be required to pay for the time counsel spent preparing a motion to exceed the page limitation on plaintiff's main brief. In his EAJA reply, counsel notes that under this court's briefing order his main brief was not, in fact, oversized, making the motion unnecessary. Therefore, he agrees that the .3 hours he spent preparing the motion should be deducted. It will be so deducted.

hours calling the Commissioner's lawyer trying to settle the case. (*Id.*, 3/25/04 entry.) This is obviously a reasonable expenditure of time for a lawyer; had the Commissioner agreed to a remand at that time, nearly a year and half worth of work and delay would have been avoided. Finally, counsel spent 1.2 hours reviewing my decision and preparing an explanatory letter to his client. (*Id.* Attach. at 2, 6/16/04 entry.) Given the length of my decision (43 pages), the ethical requirement that counsel keep his client informed, and the mental deficiencies plaintiff displays, it was reasonable for counsel to spend this time ensuring that plaintiff knew what was going on. *See Harris,* 259 F.Supp.2d at 782–83 (finding reasonable time counsel spent communicating with demanding client). In sum, I find no basis for the Commissioner's criticism of counsel's expenditure of time. *See Banks,* 2003 WL 22019796 at *6, 2003 U.S. Dist. LEXIS 14823, at *18–19 ("The examples given by Commissioner such as time to review the docket sheet, write to the clerk of the court, and write to Plaintiff are all directly related to, and necessary for, the litigation of Plaintiff's case.").

Therefore, I will award plaintiff fees based on 38.9 hours spent on the primary representation,[4] 1.7 hours spent preparing the EAJA submission, *see Uphill v. Barnhart,* 271 F.Supp.2d 1086, 1096 (E.D.Wis. 2003) (finding 1.6 hours on EAJA motion reasonable), and 4.9 hours spent on the EAJA reply, *see Wirth,* 325 F.Supp.2d at 918 (finding 5.8 hours on EAJA reply reasonable), for a total of 45.5 hours, billed at the rates set forth above.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiff's motion for an award of attorney's fees (Docket # 25) is **GRANTED,** and plaintiff's counsel, David Traver, is

awarded fees in the amount of $6744.80 ( [$146.52/hour × 2.8 hours = $410.26 for 2003] + [$148.35/hour × 42.7 hours = $6334.54 for 2004] ).

---

4. This incorporates the .3 deduction to which counsel agreed.