In the

# United States Court of Appeals
### For the Seventh Circuit

No. 04-3747

MARIA CONRAD,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:02-CV-1478—**Tim A. Baker**, *Magistrate Judge.*

ARGUED MAY 31, 2005—DECIDED JANUARY 19, 2006

Before EASTERBROOK, ROVNER, and WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* Maria Conrad applied to the Social Security Administration (SSA) for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on February 25, 2000, alleging disability since February 14, 2000, due to obesity, migraine headaches, borderline intellectual functioning with a reading disorder, pulmonary problems, degenerative changes in the knees, and major depression with psychotic symptoms. An administrative law judge (ALJ) denied her benefits on February, 22, 2002. On appeal, a district court judge reversed and remanded the ALJ's decision. Conrad subsequently filed a Motion for Award of Attorney's Fees under the Equal Access

to Justice Act (EAJA). The district court judge rejected her claim, and she appealed that decision to this court.

The EAJA provides that a district court may award attorney's fees where (1) the claimant is a "prevailing party;" (2) the government was not substantially justified in its position; (3) no "special circumstances" make an award unjust; and (4) the fee application is timely and supported by an itemized statement. *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004); 28 U.S.C. § 2412(d)(1)(A), (B). In this appeal, the only item of contention is whether the government's litigation position defending the ALJ's initial denial of benefits was substantially justified.

A brief review of the underlying decision is necessary, focusing on the aspect of the decision that formed the basis for the initial successful appeal by Conrad. In denying benefits to Conrad, the ALJ proceeded through the sequential evaluation process. The ALJ found that Conrad satisfied steps one and two. She had not engaged in substantial gainful activity since her onset date, and there was objective medical evidence of an impairment or combination of impairments that significantly interfered with her ability to perform basic work activities. Specifically, the ALJ found that her "severe" impairments included obesity and borderline intelligence with a reading disorder. The ALJ was unpersuaded that the medical tests and record supported her complaints of a "myriad of conditions and symptoms" including those regarding her sleep efficiency, pulmonary function, knee and spine degeneration, and depression with psychotic symptoms, and determined that those impairments were non-severe.

The ALJ then determined that Conrad did not meet the requirements of step three, in that her impairments did not meet or equal in severity any impairment in the Listings of Impairments found in Appendix 1, Subpart P, Regulations No. 4. Accordingly, the ALJ proceeded to

consider at step four whether Conrad could return to her past relevant work as an electric assembler, welder, and laundry worker. The ALJ concluded that Conrad retained the residual functional capacity (RFC) to perform unskilled, simple sedentary exertional work. In so concluding, the ALJ explicitly rejected the assessments of state agency experts who concluded that Conrad was capable of medium work, because those physicians did not have the benefit of all of the evidence that was before the ALJ. The ALJ similarly rejected the assessment of "some examiners" who would have limited Conrad to "sheltered" work. Although referring to examiners in the plural, the ALJ cited to only one examiner, Dr. Grandison, for that restriction to sheltered work. The ALJ held that the limitation to "sheltered" work was belied by her work history. Because Conrad's past work as an electrical assembler was unskilled, simple sedentary work which was not sheltered but did not require literacy, the ALJ concluded that she could perform that work.

On appeal to the district court, Conrad identified two errors by the ALJ. First, Conrad argued that the ALJ erred in discounting Dr. Adamson's reports concerning Conrad's frequent migraines based on the ALJ's belief that the reports reflected Conrad's subjective complaints. The district court rejected this argument, and therefore it was not a basis for the EAJA fee request. The second error alleged by Conrad was in the ALJ's failure to address Dr. Kissel's vocational assessment. Specifically, Conrad argued that the ALJ erred in failing to address the statement by Dr. Kissel that "[i]f Maria does want to proceed with work possibilities, she will need vocational support, part-time employment to start, and avoiding of any work situation that might further compromise her physical and emotional health functioning." According to Conrad, that constituted a medical source opinion that the ALJ was obligated to address under Social Security Ruling 96-8p.

The government responded that the ALJ in fact considered Dr. Kissel's recommendation when rejecting the

"sheltered" work restriction. The district court acknowledged that the ALJ explicitly considered Dr. Kissel's report at earlier stages of the sequential evaluation, but held that there was no reference to Dr. Kissel's findings at step four. Although the court accepted that the ALJ's limitation of Conrad to unskilled work was consistent with Dr. Kissel's recommendation, the court held that the ALJ failed to address the further limitation to part-time work. The government contended that the part-time limitation appeared to reflect Conrad's preferences rather than Dr. Kissel's assessment of her functional capabilities, and therefore was properly not mentioned by the ALJ. The district court, however, held that the ALJ did not characterize the report in that manner, and that principles of administrative law required the ALJ to articulate the grounds for her decision and the court must confine its review to the reasons supplied by the ALJ.

The district court agreed with Conrad that the ALJ erred in failing to explicitly consider Dr. Kissel's vocational limitations, and reversed and remanded the claim on that basis for further consideration. As the prevailing party on that issue, Conrad sought fees under EAJA. The government argued that fees were not proper because it succeeded in defending the ALJ's decision with respect to Dr. Adamson, and its position with respect to Dr. Kissel's assessment was substantially justified although ultimately unsuccessful.

A position is substantially justified if it has a reasonable basis in law and fact. The government has the burden of establishing that its position was substantially justified, and to do so must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the theory propounded. *Golembiewski*, 382 F.3d at 724; *United States v. Hallmark Construction Co.*, 200 F.3d 1076, 1078-79 (7th Cir. 2000); *Sierra Club v. Secretary of Army*, 820 F.2d 513,

517 (1st Cir. 1987). EAJA fees may be awarded if the government's pre-litigation conduct, including the ALJ decision itself, or its litigation position are not substantially justified, but the district court is to make only one determination for the entire civil action. *Golembiewski*, 382 F.3d at 724.

Although the government has the burden of establishing that its position was substantially justified, the decision of the district court on that issue is reviewed only for abuse of discretion. Accordingly, our review on appeal is limited by that standard of review, which is ultimately dispositive in this case.

The district court determined that the government's position regarding Dr. Kissel's report was substantially justified, and accordingly denied fees under EAJA. In so holding, the court held that the ALJ need only sufficiently articulate his assessment of the evidence, and that the articulation requirement was a flexible one as to which reasonable persons could disagree. The court analogized the case to that of *Stein v. Sullivan*, 966 F.2d 317 (7th Cir. 1992), in which we upheld the denial of benefits even though the ALJ failed to articulate his reasons for discounting a physician's opinion in denying benefits. We held in *Stein* that the finding that the ALJ failed to meet the articulation requirement did not mandate a finding that the government's position was not substantially justified.

Conrad argues that the district court erred in rejecting fees on that basis, protesting that *Stein* does not adopt a per se rule that precludes attorney's fees whenever the alleged error is the failure to articulate reasons for discounting a doctor's opinion. Any reliance on *Stein* as establishing such a per se rule would be erroneous, but the district court does not in fact rely on any such per se rule, instead merely analogizing this situation with the one presented in *Stein*. That is a proper use of our precedent.

Conrad further asserts that *Stein* is inapplicable, because the articulation error in this case was the failure to follow SSR 96-8p, which was not at issue in *Stein*. SSR 96-8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment, and if it conflicts with the ALJ's conclusions then the ALJ must explain why it was not adopted. This assumes, however, that Dr. Kissel's statement as to part-time work was a medical source opinion, which is defined as an opinion as to what an individual can still do despite his or her impairment.

The government's argument to the district court was essentially that the ALJ considered Dr. Kissel's opinion as to what Conrad could do, adopting the limitation to unskilled work, but did not discuss the portion of Dr. Kissel's report that was not a medical opinion but rather reflected Conrad's preferences—the limitation to part-time work. If the limitation to part-time work was not in fact a medical opinion as to the limitations imposed by Conrad's impairments, but instead was a reflection of Conrad's preferences or the optimal conditions for her return to work, then the government would have a reasonable basis in law for the argument that the ALJ did not err in failing to discuss it. The remaining question, then, is whether the government possessed a reasonable basis in fact for that argument.

The report by Dr. Kissel provides that reasonable basis in fact. In the opening paragraph explaining the purpose of the referral, Dr. Kissel stated that the referral was for a psychological evaluation to include study of cognitive and school skills, brain function, learning profile, emotional status, and "vocational preferences." In the report, Dr. Kissel included some headings reflecting "vocational considerations," and others indicating "vocational preferences," at least implying that a broader range of restrictions were considered than required by her impairments. Moreover,

the first time part-time work is mentioned, it appears following the results of her intelligence and school skills testing, and is phrased in the context of what would benefit her rather than what is required:

> Generally these results are not overly encouraging relative to her readiness for employment at present in light of the extensive range of physical and emotional health challenges. She certainly could benefit from vocational guidance and support relative to conditions under which she believes she might be able to work even on a part-time basis, placement and on-the-job training, as well as follow-along work adjustment. She certainly will need work responsibilities that are straight-forward, concrete, hands-on, would allow her to proceed at her own pace, and would be at an unskilled entry level.

Tr. at 277. Thus, at the first mention of the part-time work, it is in the context of what would benefit her, in contrast to the requirements of unskilled work that she would "certainly" need. That is consistent with the government's argument—although not articulated in enough detail to be helpful—that the requirement of unskilled work was a medical opinion considered and adopted by the ALJ, but that the part-time limitation was a preference.

Moreover, the sentence relied on by Conrad in obtaining the remand mirrors that earlier language. It does not appear under either of the "vocational" headings, instead arising under the section considering her "emotional status." After discussing that Conrad should continue her outpatient mental health services to address health issues and skills training, the report states:

> Ms. Conrad might also benefit from discussion about resources via case management. There needs to be an honest discussion with her relative to her readiness and actual possibilities for work which she could

predictably handle routinely. If Maria does want to proceed to work possibilities, she will need vocational support, part-time employment to start, and avoiding of any work situation that might further compromise her physical and emotional health functioning.

Tr. at 279. Similar to the earlier discussion, that statement appears to address the environment that would optimize her work possibilities, rather than those required by her disability. In the "vocational" discussion following the "emotional status" portion of the report, Dr. Kissel again discusses the need for straightforward, well-defined work with low stress. Only in the "vocational preferences" section does he mention that "helpful information" should she decide to proceed with identifying job possibilities could include "an honest assessment of under what conditions she might be able to work and for what length of time." That is the only reference to the amount of time she could work in those vocational sections relating to her emotional status.

Given the context in which the part-time limitation appeared, the government had a reasonable basis in fact for asserting that the record reflected consideration of Dr. Kissel's medical opinion. The ALJ adopted the requirement of unskilled work that Dr. Kissel declared to be a necessity, and the statements regarding part-time work are arguably preferences rather than a medical opinion as to the limitations of her disability, and therefore the ALJ would not have violated SSR 96-8p by failing to address it. The district court could rationally find that the government had a reasonable basis in law and fact for its position. Accordingly, the district court did not abuse its discretion in denying fees, and the decision of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*