NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 5, 2009
Decided January 14, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| No. 09-2216 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| Terri A. Grieves, *Plaintiff-Appellant*, | |
| *v.* | No. 07 CV 04404 |
| Michael J. Astrue, Commissioner of Social Security, *Defendant-Appellee*. | Jeffrey N. Cole, *Magistrate Judge*. |

**O R D E R**

Terri Grieves applied for Social Security disability benefits in 2005. The Social Security Administration ("SSA") Commissioner denied her application but the district court reversed that decision. The same district court, however, found that the Commissioner's position was substantially justified and therefore denied Grieves's request for attorneys' fees under the Equal Access to Justice Act ("EAJA"). Grieves appeals. We affirm.

I.

Grieves applied for Disability Insurance Benefits and Supplemental Security Income in 2005, claiming that she was not able to work due to degenerative disc disease, depression, and anxiety. Following the SSA's denial of her application at both the initial and reconsideration levels, Grieves requested a hearing before an administrative law judge ("ALJ"). Grieves testified at the hearing. The ALJ found that Grieves had the residual functional capacity ("RFC") to perform simple, repetitive tasks that involved lifting or carrying no more than 10 pounds frequently and 20 pounds occasionally, standing or walking no more than one-third of the workday, and crouching or stooping only occasionally. Based on this RFC, a vocational expert testified that there were jobs in the national economy that an individual with such limitations could perform. The ALJ found that, while Grieves could not return to her past work as a secretary, she could perform other jobs such as an assembler, hand packager, or hand sorter and therefore was not disabled. Accordingly, the ALJ denied Grieves's application.

The ALJ's RFC finding was inconsistent with Grieves's own testimony and the opinion of her treating physician, Dr. Jones, who claimed that Grieves was only able to sit, stand, or walk for four hours a day, that she required a 15-minute break every 15 to 20 minutes, and that she would be absent from work more than four days each month. When the vocational expert was asked to include these additional limitations in his hypothetical, he testified that there were no jobs that such person could do. But the ALJ found that Grieves was not credible because, despite the limitations she claimed, she enjoyed a relatively active lifestyle. This included doing laundry,[1] watching television, reading, playing card games, and other routine activities. The ALJ also relied on the fact that Grieves did not pursue a chronic pain program, despite her orthopaedic specialist's recommendation. The ALJ further found that Dr. Jones's opinion was not consistent with the evidence because it conflicted with the activities that Grieves was able to do and with some of the findings of her orthopaedic specialist. Accordingly, rather than giving controlling weight to Dr. Jones's opinion, the ALJ adopted the opinion of the state agency evaluators as the basis for his RFC determination.

Grieves then challenged the ALJ's decision in federal district court, which remanded the case to the Commissioner for further proceedings after finding that the ALJ had failed to make an adequate credibility determination and had inappropriately discounted Dr. Jones's opinion. Although it used some strong language—at one point calling one of the ALJ's

---

[1]The ALJ also found Grieves not credible because she testified that she could not do laundry, but had told one of her doctors that she had hurt herself while doing laundry.

observations in support of the credibility determination "unreasoned and unsupported"—the court ultimately opined that the case was close. While some evidence in the record supported the ALJ's position, the ALJ had not adequately explained his decision.

Grieves then applied to the district court for attorneys' fees under the EAJA. The district court explained it had been a close case and that the ALJ's deficiency had ultimately been a failure to adequately articulate his evaluation of the evidence. Noting that such a failure to articulate does not mandate an award of attorneys' fees under the EAJA, and that there may have been enough evidence in the record to support the ALJ's position, the district court found that the government's position was substantially justified and therefore denied the application for attorneys' fees. Grieves now appeals.

II.

On appeal, Grieves argues that she is entitled to attorneys' fees under the EAJA.  The EAJA provides that she is entitled to attorneys' fees only if "the position of the United States was not substantially justified."  28 U.S.C. § 2412(d)(1)(A).  Grieves is not entitled to attorneys' fees under the EAJA merely because she was successful in the litigation at the district court.  *See Pierce v. Underwood*, 487 U.S. 552, 569 (1988) (holding that the government can take a position that is substantially justified but still lose).  Rather, the government's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person."  *Id.* at 565–66 & n.2.  That is, the government's position must have reasonable factual and legal bases, and there must be a reasonable connection between the facts and the legal theory.  *Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006) (citing *Pierce*, 487 U.S. at 565); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004).  We review the district court's decision not to award attorneys' fees under the EAJA only for abuse of discretion. *Cunningham*, 440 F.3d at 864; *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006) ("[O]ur review on appeal is limited by [the abuse of discretion] standard of review, which is ultimately dispositive in this case.")

Grieves claims that the district court abused its discretion because its critical evaluation of the ALJ's decision negates any possible justification for denying her application for disability benefits.  In support of her position, Grieves relies on *Golembiewski*. In that case, we held that the district court abused its discretion in denying an award of attorneys' fees under the EAJA.   *Golembiewski*, 382 F.3d at 725.  We had previously vacated the district court's affirmance of ALJ's denial of Golembiewski's application and "made it clear that the Commissioner's argument had no reasonable basis in law."  *Id*.  Using highly critical language, we noted numerous problems with the ALJ's decision: it contained no discussion of credibility at all; it mischaracterized the facts by finding "no evidence of herniated discs when there was clear evidence of herniated discs"; and it "improperly

ignored three distinct lines of evidence." *Id.* at 724.  And we urged that a new ALJ be assigned.  *Id.* at 725.

Grieves's analogy to *Golembiewski* is inapt.  Unlike in *Golembiewski*, here the merits opinion was written by the same court that denied the EAJA award.  While there is some strong language in the merits opinion, we think it likely that the district court understood what it meant to suggest by using this language.  And the strong language does not exist in a vacuum: the district court also noted that it found the case close and that the ALJ might have been correct but failed to articulate his reasoning sufficiently.  Both in its EAJA and merits opinions, the district court characterized the problem with the ALJ's decision as a failure to "supply supportive reasons," and "connect all the dots in his analysis."  The district court found that although the ALJ had expressly made a credibility finding—unlike in *Golembiewski*—the reasons that the ALJ gave in his decision did not support his finding that Grieves lacked credibility.  And although  he did not analyze any other evidence that he thought conflicted with Grieves's complaints, the ALJ listed numerous facts in his summary of the case that perhaps could have supported his credibility determination.

Similarly, the district court found that the reasons the ALJ discussed for discounting the medical opinion of Grieves's treating physician were flawed and inadequate. But the district court did not conclude that the record lacked substantial evidence to support the ALJ's ruling.  It did not suggest that the ALJ was not entitled to believe the opinion of the state agency evaluators over that of Dr. Jones, but instead found that the ALJ had not adequately justified his decision. *See Dixon v. Massanari*,  270 F.3d 1171, 1178 (7th Cir. 2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision.").  And unlike in *Golembiewski*, the ALJ here did not ignore entire lines of evidence or find that there was no evidence in support of Grieves's application.  Rather, the ALJ acknowledged contrary facts and chose to discount them, albeit without adequate explanation.

This case is thus unlike *Golembiewski* but nearly identical to *Cunningham*, a case relied upon by the government.  In that case, the ALJ denied benefits after finding that the applicant was not credible and discounting the opinions of the applicant's treating physician. *Cunningham*, 440 F.3d at 863. The district court remanded for "further articulation of the analysis," finding that the ALJ did not "adequately describe the medical evidence leading to [his] conclusions" or "properly assess Cunningham's credibility." *Id.*  But the district court later denied the applicant's motion for attorneys' fees under the EAJA.  *Id.*  The applicant appealed and, like Grieves, relied almost exclusively on *Golembiewski* to argue that the district court abused its discretion in finding that the ALJ's decision was substantially justified.  This court disagreed.  We reasoned that the case was unlike *Golembiewski*. The ALJ did make a credibility determination, even if it was inadequate. *Id.* at 864.  There was

evidence in the record to support the ALJ's conclusion that the opinion of the applicant's treating physician was not supported by substantial evidence, "even though [the ALJ] did fail to adequately explain the connection." *Id.* at 865. And we observed that the articulation requirement is "deliberately flexible" and that a failure to meet it "'in no way necessitates a finding [that] the [government's] position was not substantially justified.'" *Id.* (quoting *Stein v. Sullivan*, 966 F.2d 317, 319–20 (7th Cir. 1992)).

This is a close case. The district court might well have been justified to grant attorneys' fees, but it chose not to. Like *Cunningham*, the ALJ's decision contained several facts that may have helped justify his decision, including evidence that some of Grieves's statements to her orthopaedic specialist were not completely honest and that she had falsely denied alcohol use. The ALJ chose to articulate a few facts and was silent about the others. Given the "deliberately flexible" nature of the articulation requirement, we cannot say that the district court abused its discretion in finding that the ALJ's decision was substantially justified.

### III.

The decision to award or deny attorneys' fees under the EAJA lies in the discretion of the district court. In this case the same district court that decided the original case and concluded that it was a close case also found that the government's position was substantially justified. For the reasons stated above, the record does not compel the conclusion that the government's position lacked substantial justification. Thus, the district court did not abuse its discretion in denying Grieves's application for attorneys' fees under the EAJA. Accordingly, we AFFIRM the decision of the district court.