**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 18, 2010
Decided September 30, 2010

**Before**

SANDRA DAY O'CONNOR, *Associate Justice*[*]

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 09-3942

| | | |
|---|---|---|
| DEBRA K. HUBER, | | Appeal from the United States District |
| | *Plaintiff-Appellant*, | Court for the Central District |
| | | of Illinois. |
| *v.* | | |
| | | No. 07-cv-2246 |
| MICHAEL J. ASTRUE, | | |
| | *Defendant-Appellee*. | Michael P. McCuskey, |
| | | *Chief Judge*. |

### O R D E R

Debra Huber appeals from a judgment of the United States District Court for the Central District of Illinois denying her petition for an award of attorney's fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. We find that the Commissioner of Social Security was not "substantially justified" in supporting the Administrative Law

---

[*] The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court (Ret.), sitting by designation pursuant to 28 U.S.C. § 294(a).

Judge's (ALJ's) ruling in appellant's underlying Social Security disability benefits claim, and we therefore reverse and remand for entry of an award of fees.

Based on her history of a stroke, carpal tunnel syndrome, hypertension, diabetes, asthma, a thyroid condition, and depression, Appellant Huber filed a claim with the Social Security Administration for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. 42 U.S.C. §§ 416(I), 423, 1381a, 1382(a). After a hearing, an ALJ denied Huber's application in March 2007, finding that she was not disabled within the meaning of the Social Security Act and that she could perform a number of jobs in the national economy. Huber then sought judicial review in the district court pursuant to 42 U.S.C. § 405(g).

Magistrate Judge David G. Bernthal issued a report and recommendation on February 2, 2009, recommending that the district court deny Huber's motion to remand her case pursuant to 42 U.S.C. § 405(g), sentence six, which allows a remand to the agency "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." In a second report and recommendation on February 11, 2009, however, Magistrate Judge Bernthal recommended that the district court grant Huber's motion to remand her case pursuant to 42 U.S.C. § 405(g), sentence four ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). In her motion for a § 405(g) sentence four remand, Huber argued that the ALJ erred by failing to consider the second of two reports in the record from a psychiatrist, Dr. Tin Howard, and by failing to address inconsistencies in the two reports.

Dr. Howard completed two reports about Huber on the same day: a Psychiatric Review Technique (PRT) and a Mental Residual Functional Capacity Assessment (Mental RFC). App. at 261-78. The PRT reflects that Huber has mild limitations in (1) restriction of "daily living" activities, (2) "difficulties in maintaining social functioning," and (3) "difficulties in maintaining concentration, persistence, or pace." *Id.* at 271. The PRT also notes that Huber "has no difficulty maintaining social functioning," "relates to others with no problems," and has "no difficulty in maintaining concentration, persistence, or pace." *Id.* at 273. In contrast, the Mental RFC Assessment describes Huber as "moderately limited" in (1) "[t]he ability to interact appropriately with the general public," (2) "[t]he ability to accept instructions and respond appropriately to criticism from supervisors," and (3) "[t]he ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Id.* at 276. The Mental RFC Assessment concludes: "There is evidence that the claimant cannot interact appropriately with the public or respond appropriately to criticism from supervisors, work with others, get along with workers and maintain socially appropriate behavior, so limit [to]

work tasks that do not require interaction with the general public." *Id.* at 277. The Assessment further determines that Huber can, *inter alia*, "carry out short and simple instructions," "sustain ordinary routine," and "perform[] simple tasks." *Id.*

In recommending the remand under § 405(g), sentence four, the magistrate judge upheld much of the ALJ's assessment of Huber's capacities, but did not sustain the ALJ's assessment of Huber's social functioning. The magistrate judge explained that the ALJ stated that she "generally agreed" with Dr. Howard's conclusion in the PRT that Huber had "no (or mild) limitations" in social functioning. Feb. 11, 2009 Report and Recommendation (R&R) at 12. The ALJ also noted that Huber "reports good relationships with her siblings" and "no evidence of evictions, altercations, or severe social isolation." *Id.* Based on the evidence just recited, the ALJ determined that Huber had only mild limitations in social functioning and concluded that Huber "was able to perform a significant number of jobs available in the national economy, including interviewer, information clerk, general office clerk, or ticket checker." *Id.* at 6. The magistrate judge noted that most of these proposed jobs "appear to require interaction with the general public," *id.* at 13, which Dr. Howard's Mental RFC Assessment specifically stated that Huber should not do on account of her "moderate" limitations in social functioning. *Id.* The ALJ provided no explanation for rejecting the "moderate" limitations determination in the Mental RFC Assessment, which conflicted with the "mild" limitations determination in the PRT, on which the ALJ did rely. The magistrate judge found that the ALJ's lack of explanation prevented the court from "perform[ing] a meaningful review" of the ALJ's decision about appellant's limitations in social functioning, and therefore recommended remanding the case for reconsideration in light of the inconsistent reports by Dr. Howard. *Id.* at 13. On March 3, 2009, District Judge Michael McCuskey accepted in full the reports and recommendations of the magistrate judge and granted Huber's motion for a remand under 42 U.S.C. § 405(g), sentence four.

After the remand, Huber filed an application for attorneys' fees under the EAJA, and the matter was assigned to the same magistrate judge. The Commissioner conceded that Huber is a prevailing party who timely filed an application for attorney's fees,[1] but argued that his position was substantially justified. *See* Aug. 26, 2009 R&R, at 1. The magistrate judge held that the position of the Commissioner was substantially justified, and therefore

---

[1]Because the remand Huber obtained was under sentence four of 42 U.S.C. § 405(g), her application for fees was timely. *See Shalala v. Schaefer*, 509 U.S. 292, 298 & 300-01 (1993) (holding that a sentence four remand under 42 U.S.C. § 405(g) is a final, appealable decision, and that a party who wins a remand under sentence four is a "prevailing party" for purposes of the EAJA); *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991) ("In sentence four cases, the filing period [for attorney's fees] begins after the final judgment ('affirming, modifying, or reversing') is entered by the court and the appeal period has run, so that the judgment is no longer appealable.").

recommended that the district court deny Huber's application for attorney's fees.  *Id.* at 2.  In an order on October 5, 2009, the district court agreed with the magistrate judge's recommendation and denied Huber's motion for attorney's fees.  This appeal followed.

We review the district court's denial of a petition for attorney's fees for abuse of discretion.  *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1078 (7th Cir. 2000).  This deferential standard, however, "does not dilute our meaningful examination of the district court's decision."  *Id.* (citing *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996)).

The EAJA provides that a district court "may award attorney's fees where (1) the claimant was a 'prevailing party,' (2) the government's position was not 'substantially justified,' (3) no special circumstances make an award unjust, and (4) the claimant filed a timely and complete application with the district court."  *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009).  The Commissioner here contests only the second requirement, arguing that his position was "substantially justified."  The Commissioner's position is "substantially justified" if it "has a reasonable basis in fact and law, and if there is a reasonable connection between the facts and the legal theory."  *Id.* (citing *Pierce*, 487 U.S. at 565).  The Commissioner bears the burden of proving that his position was substantially justified, and "EAJA fees may be awarded if either the government's pre-litigation conduct or its litigation position are not substantially justified."  *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004) (quoting *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994)).  The ALJ's decision constitutes "part of the Commissioner's pre-litigation conduct."  *Cunningham v. Barnhart*, 440 F.3d 862, 863-64 (7th Cir. 2006).

In arguing that the district court abused its discretion by denying fees, Huber contends that the ALJ contravened longstanding agency regulations and judicial precedents by failing to resolve material inconsistencies in the evidence, failing to build an "accurate and logical bridge" from the evidence to her RFC finding, and cherry-picking evidence to support her decision.  We agree.

The alleged violations all stem from the same factual predicate in the ALJ's decision, namely the ALJ's total failure to mention, address, or adequately account for Dr. Howard's finding in the Mental RFC Assessment that Huber has moderate limitations in social functioning and should be limited to jobs that do not involve working with the general public.  Huber correctly alleges that the ALJ's failure contravened Social Security Ruling 96-8p.  That Ruling requires an RFC assessment to be "based on *all* of the relevant evidence in the case record," including, as particularly relevant here, medical source statements.  Social Security Ruling 96-8p.  The Ruling also requires the adjudicator to provide a narrative discussion to "explain how any material inconsistencies or ambiguities in the evidence in

the case record were considered and resolved," and affords particular significance to medical opinions, stating "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*; *see Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006) ("SSR 96-8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment, and if it conflicts with the ALJ's conclusions then the ALJ must explain why it was not adopted.").

The requirements in the Social Security Ruling are not dissimilar to those in precedents of this Circuit. For example, in *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984), this Court reversed the denial of disability benefits in a case where the ALJ relied on one report by a doctor but totally disregarded later reports by the same doctor that directly contradicted the first report. We noted that by "relying on the first report, the ALJ acknowledged [the doctor's] credibility, and there is nothing to indicate that the later reports are in any way less credible." *Id.* at 609. Specifically in the EAJA attorney's fees context, this Court reversed a district court denial of fees where the ALJ "failed to specify what 'new and material evidence' led him to substitute his own, more favorable assessment of [the appellant's] residual functional capacity for that of . . . physicians." *Stewart*, 561 F.3d at 684. In that case, we relied on our "repeated holding that a denial of benefits cannot be sustained where an ALJ failed to articulate the bases of his assessment of a claimant's impairment." *Id.* (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786-87 (7th Cir. 2003)). In this case, the ALJ determined that Huber had only mild limitations in social functioning and relied for that conclusion on non-medical evidence, such as Huber's relationship with her siblings and lack of evictions. The ALJ thereby substituted her assessment of Huber's mental RFC for the moderate limitations assessment that Dr. Howard noted in his Mental RFC Assessment. Without an explanation of why or whether she considered and rejected the moderate social functioning limitations determination, the ALJ cannot be said to have articulated the basis for her decision.

The Commissioner, citing *Stein v. Sullivan*, 966 F.2d 317 (7th Cir. 1992), tries to argue that the ALJ's error in this case is just a mere "error[] of articulation." Appellee's Br. at 20. We do not agree. Here the ALJ failed to even acknowledge the existence of the most directly relevant report by a physician on whom the ALJ otherwise relied; the ALJ did not grapple with the report's conclusion, which directly contradicts the ALJ's Mental RFC finding. The magistrate judge's Report and Recommendation suggesting a remand does state that the magistrate recommended a remand "so that the ALJ [could] explain her reasoning regarding Plaintiff's social functioning in light of the inconsistent opinions in Dr. Howard's reports." Feb. 11, 2009 R&R at 13. But the magistrate judge recognized the large size of the gap in explanation, noting that it prevented the court from even "perform[ing] a meaningful review of" the ALJ's decision. *Id.*

The other cases on which the Commissioner relies are also distinguishable. This court in *Cunningham v. Barnhart* affirmed the district court's denial of EAJA attorney's fees, but noted that the claimant had not argued that "the ALJ mischaracterized evidence or completely ignored evidence." 440 F.3d at 864. Huber here does correctly argue that the ALJ "completely ignored" Dr. Howard's Mental RFC Assessment, the more on-point of Dr. Howard's two reports for the ALJ's Mental RFC determination. Our recent unpublished decision in *Grieves v. Astrue*, 360 Fed. Appx. 672 (7th Cir. 2010) (non-precedential), also does not help the Commissioner. In *Grieves*, the district court described the problem with the ALJ's decision as "a failure to 'supply supportive reasons,' and 'connect all the dots in his analysis.'" *Id.* at 675. In Huber's case, the ALJ failed to acknowledge, much less connect, a crucial dot: Dr. Howard's Mental RFC Assessment.

Although we recognize that the "requirement that the ALJ articulate [her] consideration of the evidence is deliberately flexible," *Stein*, 966 F.2d at 319, the requirement cannot be stretched to encompass this case, in which the ALJ ruled contrary to and failed to mention the most directly relevant medical report. The record in this case therefore "commands the conclusion that the district court was wrong" to deny attorney's fees under the EAJA. *EEOC v. O&G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 884 (7th Cir. 1994) (citing *Pierce*, 487 U.S. at 570-71 (internal quotation marks omitted)).

Appellant's additional claim that the district court abused its discretion by denying EAJA fees in relation to the ALJ's vocational analysis is an attempt to relitigate the underlying merits of her disability adjudication that we need not consider.

For the foregoing reasons, we REVERSE the decision of the district court denying Huber's application for fees under the EAJA and REMAND for the district court to determine the appropriate amount of fees to award to Huber.