NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 27, 2010
Decided August 2, 2010

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-2170

| | |
|---|---|
| JOANNE MORGAN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 07 cv 1741 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, *Defendant-Appellee*. | Sidney I. Schenkier, *Magistrate Judge*. |

**O R D E R**

Joanne Morgan claims that she is disabled by depression and anxiety, back disorders, and weakness in her legs and shoulders. The Social Security Administration denied her claims for disability insurance and supplemental security income at all stages, and a magistrate judge, presiding by consent, upheld the decision. But because we conclude that the ALJ erred in determining Morgan's physical residual functional capacity ("RFC") and in evaluating her credibility, we vacate and remand for further proceedings.

Morgan's personal history is marred by significant hardship that relates both to the physical and psychological aspects of her application for disability benefits. Morgan grew up in an abusive home and later endured two abusive marriages. During her second marriage, Morgan had three children in one year (one pregnancy involved twins) and gave the twins up for adoption. In her application for benefits, Morgan attributed some of her depression and anxiety to remorse over the adoption and fear of her ex-husband. Additionally, in 1978 at the age of 19, Morgan developed Guillain Barré Syndrome ("GBS") and had to relearn how to walk.[1] She recovered, but some of the symptoms persisted.

Despite these difficulties, Morgan graduated from high school, attended some college, and obtained a certificate to work as a nursing assistant. She also worked various jobs including cook, housekeeper, assembly-line worker, personal assistant, and dispatcher. Her longest full-time position was in a convenience store from 2000 to 2002 where she worked as a cook and cashier. Most recently, she worked as a home-care assistant from September 2003 until July 2004, when her employer fired her because she had transportation difficulties and because she performed too slowly.

After Morgan applied for benefits in February 2004, two state-agency doctors evaluated her mental health. Psychologist Erwin Baukus examined Morgan and diagnosed her with chronic forms of major depression and generalized anxiety. He also noted that she had a history of substance abuse and highlighted that she had consumed 12 beers in one sitting only 2 days before their appointment. Based on her alcoholism, Dr. Baukus opined that Morgan would "most likely spend [disability] funds on alcohol" and remarked that depression "is often a symptom of alcohol dependence." Dr. Carl Hermsmeyer, the second state-agency doctor, then assessed Morgan's mental RFC. He concluded that she had mild limitations in performing daily activities and moderate difficulties maintaining social functioning, concentration, persistence, and pace, but he found no evidence of decompensation. Based on these findings, Dr. Hermsmeyer concluded that Morgan's mental impairments did not significantly limit her ability to perform most work-related activities but that she had moderate limitations in her ability to understand, remember, and carry out instructions.

---

[1] GBS is a rare autoimmune disorder affecting the peripheral nervous system. The initial symptoms are usually weakness or tingling sensations in the legs, but in severe cases the symptoms can spread to the arms and upper body and can cause paralysis. Although most patients recover from GBS, some can experience continued symptoms and weakness. *See* STEDMAN'S MEDICAL DICTIONARY 1755 (27th ed. 2000).

Morgan's application for benefits also included independent medical records documenting her physical health as of December 2005, when she was struck by a row of shopping carts that toppled over in a parking lot. This incident caused Morgan to experience severe pain in her back and left foot, so doctors prescribed Vicodin and physical therapy. Once she began receiving treatment for these injuries, Morgan was also diagnosed with several other physical impairments. Two MRIs revealed degenerative changes and bulging discs in her back but no herniation or stenosis. Dr. Thomas Szymke, a private rehabilitation specialist, examined these results and found that she suffered from facet sclerosis in her lower back, osteitis in her sacroiliac joints, joint contracture, and weakness in her right rotator cuff. Morgan was also diagnosed with hypertension, hypothyroidism, gastroesophageal reflux disease ("GERD"), high cholesterol, and hypercholesterolemia, but a few months of medication apparently improved these conditions. To support Morgan's application for benefits, Dr. Szymke provided a report documenting these ailments.

Morgan's written application also addressed her daily functioning. When describing her hygiene habits, Morgan wrote that she bathed only once a week and that she did not fix her hair or regularly change her clothes. She also noted that she was often forgetful and that she felt lethargic and anxious. Because of these limitations, Morgan explained, she depended on her mother and son for daily care.

At her hearing, Morgan, who appeared pro se, elaborated on her impairments. She testified that she could not work because of anxiety, mood swings, and depression. She also explained that she could not stand or sit for more than two hours, that she had numerous back and leg problems, and that she needed to take frequent breaks. Although she acknowledged taking Vicodin and over-the-counter pain medicine, she said that her financial situation prevented her from taking anything else. She testified that she read and prayed to help cope with her depression.

Both Morgan and her adult son testified about how these conditions affected her daily activities. Morgan explained that her depression caused her to prefer being alone and that her physical conditions limited her ability to do things like bending to put on shoes. Despite these limits, Morgan testified that she went to physical therapy and occasionally shopped for groceries or walked four blocks to the library. She also acknowledged doing various household chores such as cooking, laundry, and washing dishes. Morgan's son, however, contradicted his mother's statements regarding her ability to do many of these chores. He testified that he did most of the shopping and housework and that even simple communication with his mother was often difficult due to her mental state. When the ALJ asked whether she could return to work as a cook, Morgan replied that she would not get hired because she was too slow. Finally, the ALJ asked Morgan about her drug and alcohol abuse, and she responded that she had not abused drugs or alcohol for a long time.

After listening to Morgan's testimony, a vocational expert ("VE") testified regarding the work available to someone with her limitations. The ALJ first asked what work would be available to someone with a limited ability to climb, balance, stoop, kneel, crouch, or crawl; occasional concentration deficiencies; and a limited ability to interact with others. The VE reported that such a person could do some of Morgan's past work and some forms of light work. The ALJ then asked whether sedentary jobs existed if the individual also could not stand for more than an hour at a time. The VE noted that most sedentary jobs required interaction with the public but that such an individual would still be able to hold some other positions, including work as a shipping clerk or "light" variations of kitchen helper, janitor, cleaner, and housekeeper.

The ALJ then evaluated Morgan's claim under the required five-step analysis, 20 C.F.R. §§ 404.1520, 416.920, and concluded that she was not disabled. The ALJ found that (1) Morgan had no substantial gainful employment in 2005, (2) her back disorders, history of GBS, and anxiety and depression constituted severe impairments, (3) these impairments did not collectively meet or equal a listed impairment, (4) Morgan had the RFC to perform some sedentary work, and (5) based on this RFC she was able to perform some of her previous jobs or other jobs. The ALJ premised his decision on an adverse credibility finding regarding "the intensity, persistence and limiting effects" of Morgan's conditions. The ALJ thought Morgan exaggerated her symptoms because she was not receiving treatment for her mental illness; she was not using an assistive device for her physical impairments; she could engage in daily activities that included walking four blocks, reading, and praying; and she herself testified that she was able to work and do household activities. The ALJ further noted Morgan's substance abuse and credited Dr. Baukus's conclusion that her depression was related to her drinking. The ALJ's determination was upheld by the magistrate judge.

On appeal Morgan complains that the ALJ's decision—which is the final word from the Commissioner because the Appeal's Counsel declined review, *see Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008)—is not supported by substantial evidence because it is based on an incomplete RFC determination and an unsound adverse credibility finding. Regarding the RFC determination, Morgan argues that the ALJ should have obtained a physician's report documenting her exertional limitations, and that, without this assessment, the ALJ overlooked many of her physical impairments (including, for example, the injuries to her ankle and back following the shopping-cart incident).[2]

---

[2] Physicians will frequently address a claimant's physical RFC and document the findings on an approved form such as SSA-4734-BK, and ALJs often rely on these assessments to support their ultimate RFC determinations.

We agree with Morgan that the ALJ failed to properly assess her physical RFC. The problem, though, is not merely that the ALJ failed to seek a physician's assessment, but that without it, the RFC determination is not supported by any evidence. An ALJ must determine a claimant's RFC based on the evidence in the record, *see* 20 C.F.R. § 404.1546(c); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008), and when the claimant is pro se, the ALJ may need to develop the record in order to make this determination, *see Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). If an ALJ determines a claimant's RFC without obtaining a physician's RFC evaluation, other evidence in the record must support the determination. *See Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006). Here, however, the ALJ did not request a physical evaluation, and the record does not support his decision. The only medical evidence concerning Morgan's physical condition is contained in Dr. Szymke's report, which mentions Morgan's weakness in her shoulder and legs, and numerous other ailments. By determining Morgan's physical RFC without reference to these highly pertinent aspects of her condition, the ALJ eschewed his obligation to consider the aggregate impact of Morgan's impairments (including the extent of her foot, shoulder, and back conditions), *see* 20 C.F.R. § 404.1523; *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003), and failed to build a "logical bridge" from the evidence to his ultimate conclusion that Morgan is not disabled, *see Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010); *Craft*, 539 F.3d at 673.

The ALJ's adverse credibility finding is similarly unsupported by the record. Although we defer to credibility findings that are not "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006), the finding must be justified by specific reasons, *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). In this case the ALJ's credibility finding was based on at least four pieces of unsound reasoning. First, the ALJ disbelieved Morgan because she was not receiving medical attention for her impairments, but he failed to acknowledge that Morgan had testified that she was unable to afford treatment. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). Next the ALJ doubted the extent of Morgan's depression because she could pray and read books, but no evidence supports this illogical reasoning, and the ALJ should not have made this sort of medical determination without reference to medical evidence. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Third, the ALJ credited Dr. Baukus's statements suggesting that Morgan's symptoms resulted from alcoholism and not depression even though the medical evidence substantiated Morgan's claims of depression. Even if substance abuse exacerbated that condition, it "does not prove that the mental illness itself is not disabling." *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006). And finally, we are troubled by the ALJ's decision to rely on Morgan's self-assessment of her ability to work even though Morgan's son indicated that Morgan's mental state limited her ability to assess her own capabilities. *See Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11, 22 (1st Cir. 2002). Although these errors in the ALJ's credibility determination, standing alone,

might be insufficient to order remand, together they cast doubt on the soundness of the ALJ's determination that Morgan is not disabled.

The judgment is therefore **VACATED** and the case is **REMANDED** to the Social Security Administration so that the ALJ can fully address the functional limitations of Morgan's physical impairments and fairly assess her credibility.